UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| THEODORE ROBERT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:15CV173-PPS |
| | ) |
| CITY OF SOUTH BEND, et al., | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

Theodore Robert was a police officer with the City of South Bend Police Department from November 2006 until he voluntary resigned on October 19, 2015, after being indicted on a federal criminal charge to which he ultimately pled guilty. Prior to his resignation, Robert voiced concerns about racial discrimination in the police department, and he filed several complaints with the EEOC. He also filed a federal lawsuit. He alleges that the police department retaliated against him because he filed those complaints and lawsuit. But because there was no material adverse employment action taken against him, his retaliation claims fails, and summary judgment will therefore be granted in favor of the defendants.

**Background**

Robert's tenure as a police officer with the South Bend Police Department started in November 2006. As early as 2010, Robert began complaining that he was being treated unfairly by the SBPD and that he had been the victim of discrimination. [DE 53-2 at 36.] Since 2012, Robert has filed a number of EEOC complaints, and he has written several

letters. [DE 53-2 at 8-10.] On December 13, 2013, Robert filed a federal lawsuit alleging race discrimination when he was denied a promotion. [Case No. 2:13-cv-274 (filed Aug. 8, 2013).] That case remains pending before Judge Van Bokkelen. It's a mystery to me why Robert did not bring these claims in the prior lawsuit. The defendants moved to consolidate the two cases, but the Magistrate Judge denied that motion, finding that this lawsuit would be likely to delay the first one. [DE 46 in Case No. 2:13-cv-274.] As it turned out, this case has proceeded more expeditiously.

Following the filing of that lawsuit, Robert continued to complain of discrimination and unfair treatment of black police officers, and he submitted a letter to the Board of Public Safety, the City's Human Resources Department and the office of the Mayor of South Bend. On June 10, 2014, he and other black officers in the SBPD presented four separate complaints requesting an investigation into their allegations of racial discrimination by the Mayor of South Bend and the police chief, Ronald Teachman. [DE 53-2 at 8-10.] According to Robert, a week later, on June 17, 2014, Robert and other officers made similar complaints to the Board of Public Safety during its monthly meeting. [DE 1 at 5.]

On July 4, 2014, before reporting for the afternoon shift at the SBPD, Robert drove his SBPD-issued police car to the gym. On his way, he noticed trash in the street in front of a home on his block. According to Robert, he had called the City's Code Enforcement Department to file an ordinance violation complaint against his neighbor due to the large accumulation of trash on the neighbor's yard which had been there for over a week. Robert

claims that he stopped his police car, pulled over to the curb, picked up the trash that had been in the street, and placed it in the yard. [DE 53-2 at 15-19.]

Later that day, Sergeant James Wolff, a police officer with the SBPD, informed Robert that the neighbor had filed a complaint about an officer throwing trash in his yard. [DE 53-2 at 21.] According to Sergeant Wolff, the homeowner asked that a report be filed. [DE 53-4 at 2 ¶6.] Because Robert lived on the same street as the neighbor, matched the description of the suspect provided by the neighbor, and drove a SBPD-issued squad car with a number consistent with one of the digits provided by the neighbor, Sergeant Wolff spoke with Robert about the incident. [DE 53-2 at 2 ¶7.] Eventually, Robert admitted to Sergeant Wolff that he took the trash from the street and placed it in the neighbor's yard. [DE 53-2 at 22.] Despite the possibility that the conduct in question could be investigated as vandalism, ultimately, no criminal charges were ever filed against Robert.

Because the conduct involved in the trash incident also potentially constituted police misconduct, an Internal Affairs file was opened. Captain Keith Schweizer was responsible for conducting the investigation into Robert's actions. Although Robert was off duty when then the trash incident occurred, Robert admits that because he was in his police vehicle at the time, he was subject to the rules and regulations set out in the police manual. [DE 53-2 at 7.] Captain Schweizer commenced his investigation into the trash incident and Robert responded by filing a complaint of his own — this one against Sergeant Wolff, the on scene officer who investigated the trash throwing incident. Captain Schweizer was assigned to investigate both the original complaint against Robert and the complaint

Robert lodged against Sergeant Wolff for how he handled the underlying incident. [DE 53-2 at 30; DE 53-5 at 4 ¶14.] Captain Schweizer issued his opinion sustaining the allegations against Robert and exonerating Sergeant Wolff of any wrongdoing in the way he conducted the investigation. [DE 53-5 at 5 ¶¶16-18.]

Robert was not actually disciplined following the trash investigations. [DE 53-2 at 41.] However, on March 13, 2015, about 8 months after the trash investigations, Police Chief Teachman referred Robert to the Board of Public Safety with a recommendation for discharge. According to Police Chief Teachman, this recommendation was based on Captain Schweizer's Internal Affairs investigation and Robert's numerous other episodes of misconduct. [DE 53-6 at 4 ¶13.] But Robert was not terminated.

It does not appear that the Board of Public Safety ever took up the recommendation for discharge made by the police chief. It's not clear to me why. Instead, Robert resigned in October 2015. In May of that year, Robert had been indicted on a federal criminal charge to which he ultimately pled guilty. [Case No. 3:15-cr-42 (filed May 14, 2015).] The charge stemmed from a 2010 incident in which Robert seriously injured a person in his custody. In that federal criminal case, Robert admitted that he repeatedly pushed the victim against a wall with his arm across the victim's throat, and after the victim attempted to respond, Robert struck the victim across the face, causing a laceration that required multiple sutures. [DE 53-8 at 6.] Robert eventually resigned from the SBPD on October 19, 2015 and later pled guilty to the charge, rendering him a convicted felon and unemployable as a police officer.

**Analysis**

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute about a material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the Court construes "all facts and reasonable inferences from the record in the light most favorable to [ ] the non-moving party." *Moser v. Ind. Dep't of Corr.*, 406 F.3d 895, 900 (7th Cir. 2005).

*1. Title VII Retaliation*

Robert's first claim is a narrow one: he says that he was retaliated against, in violation of Title VII, when the SBPD conducted two investigations into the trash incident on July 4, 2014 — Sergeant Wolff's investigation of the citizen complaint and Captain Schweizer's Internal Affairs investigation. Claims of retaliation under Title VII are subject to the *McDonnell Douglas* burden-shifting analysis. Robert must first establish a prima facie case of retaliation, at which point the burden of production shifts to the City to come forward with a legitimate, non-retaliatory reason for its actions. If the City rebuts the prima facie case, then Robert has a chance to show that the City's proffered reasons are merely pretextual. *McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 483 (7th Cir. 1996). To make out a prima facie case, Robert must show that: (1) he engaged in a statutorily protected activity; (2) he suffered a materially adverse employment action; and (3) a causal connection exists between the statutorily protected activity and the action taken. *Id.*

5

The law in this Circuit has undergone a shift in recent years. In *Ortiz v. Werner Enterprises, Inc.*, the Seventh Circuit abandoned the dichotomy of direct and indirect evidence previously used at summary judgment in employment discrimination cases and held that, the "sole question that matters" is "[w]hether a reasonable juror could conclude that [the plaintiff] would have kept his job if he had a different ethnicity, and everything else had remained the same." 834 F.3d 760, 764 (7th Cir. 2016). The Court also jettisoned the "convincing mosaic" as a legal standard. *Id.* Rather, the Court held that all evidence should be considered together to understand the pattern it reveals. *Id.* The Court held that "district courts must stop separating 'direct' from 'indirect' evidence and proceeding as if they were subject to different legal standards." *Id.* at 765. Despite the shift, the Court clarified that its decision did not concern the burden-shifting framework of *McDonnell Douglas* or any other burden-shifting framework. *Id.* at 766. *McDonnell Douglas* provides a means of organizing, presenting, and assessing circumstantial evidence in frequently recurring factual patterns found in discrimination cases. *David v. Bd. of Trs. of Cmty. Coll. Dist. No., 508*, 846 F.3d 216, 224 (7th Cir. 2017).

There is no dispute that Robert engaged in statutorily protected activity when he filed several EEOC charges and a federal lawsuit against the City. Having demonstrated that he engaged in a statutorily protected activity, Robert must next show that he suffered a materially adverse employment action. A materially adverse employment action is one that would dissuade a reasonable employee from engaging in the protected activity. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Although it is not necessary

that the employment action affect the terms and conditions of one's employment, *Roney v. Ill. Dep't of Transp.*, 474 F.3d 455, 461 (7th Cir. 2007), threats of disciplinary action, and discipline that is never carried out, are not materially adverse employment actions, *see Poullard v. McDonald*, 829 F.3d 844, 856 (7th Cir. 2016). That is because "[f]ederal law protects an employee only from retaliation that produces an injury." *Stephens v. Erickson*, 569 F.3d 779, 790 (7th Cir. 2009).

It is clear that the July 2014 investigations into the trash incident are not materially adverse employment action. Robert himself acknowledges that Sergeant Wolff was right to investigate the citizen complaint. [DE 53-2 at 23 ("If someone called in about a complaint of an officer putting trash on the yard, yes. If I was a sergeant, I will investigate the complaint ... Sergeant Wolff has an obligation to investigate that complaint.").] The investigations also did not result in any actual discipline. Instead, they merely raised the possibility that Robert would be disciplined. While the possibility of discipline can be stressful, possibility is not enough to support a claim for retaliation. *Poullard*, 829 F.3d at 856.

It is true that eight months after the investigations, Robert was recommended for discharge by Police Chief Teachman, based partly on the trash incident. But Robert did not allege that this recommendation constitutes adverse employment action. And even if he had, Robert was never actually discharged. Instead, he voluntarily resigned more than a year later after he had been indicted on a felony civil rights violation.

Robert argues that the SBPD did not follow its own duty manual in investigating

both the citizen complaint and Internal Affairs investigation. But let's suppose that's true. It's really neither here nor there because SBPD's failure to follow its own internal policies and procedures alone does not constitute adverse employment action under federal law. At most, "systematic abandonment" of protocol could be relevant to the SBPD's motive in investigating Robert for misconduct. *See Kidwell v. Eisenhauer*, 679 F.3d 957, 969 (7th Cir. 2012). But merely failing to go "by the book" when investigating allegations of vandalism from a citizen cannot turn these facts into an adverse employment action. Simply put, neither Sergeant Wolff's investigation nor Captain Schweizer's Internal Affairs investigation would dissuade a reasonable employee from engaging in protected activity.

But let's suppose Robert can demonstrate that he suffered an adverse employment action. It matters not because there is another problem with Robert's retaliation case: he can't demonstrate a "causal link" between the protected activity and the adverse employment action. To make this link, Robert must demonstrate that the SBPD would not have taken the adverse action "but for" the protected expression. *McKenzie*, 92 F.3d at 483. Although suspicious timing can give rise to an inference of causation, "where a significant intervening event separates an employee's protected activity from the adverse employment action he receives, a suspicious-timing argument will not prevail." *Kidwell*, 679 F.3d at 967 (discussing suspicious timing in the context of First Amendment retaliation) (internal quotation marks omitted). An employee's engaging in protected activity cannot immunize him from subsequent investigation, discipline, or termination based on his own inappropriate workplace behavior. *Id.*

8

And that is precisely the case here — Robert's own act off dumping garbage on his neighbor's lawn and the subsequent complaint from the neighbor constitute a significant intervening factor that entirely disrupts the chain of causation. Even though Robert had complained of discrimination and unfair treatment relatively close in time to the July 4 investigations (an argument which I can't even discern from his complaint or brief), the report from the neighbor is a significant intervening event that removes any inference of causation. And as I noted before, Robert himself concedes the SBPD should have investigated the complaint. It was Robert's own suspected vandalism, which was reported to the SBPD by a citizen (who was not associated with the SBPD), that prompted both investigations.

Robert has presented, and I have considered, extensive evidence attempting to show that the SBPD did not follow its own internal procedures when it investigated the citizen's complaint and when it conducted the Internal Affairs investigation into Robert's alleged misconduct. For example, Robert argues that the SBPD did not actually receive a citizen complaint because it wasn't documented on the proper form, that Robert did not receive his *Garrity* rights when questioned about the neighbor's complaint, and that the SBPD did not provide a written statement of the allegations to Robert when investigating the trash incident. Although this failure to follow procedure can't turn a non-adverse employment action into an adverse one, under certain circumstances, it could be indicative of a retaliatory motive. *See Kidwell*, 679 F.3d at 969.

But whether Robert is correct that the SBPD made mistakes in its handling of both

investigations — which the City strongly disputes — it is beside the point because Robert's allegations of the SBPD's failure to follow procedure, standing alone, are not sufficient to demonstrate the causal link. An employer isn't required to rigidly adhere to its procedural guidelines in order to avoid an inference of retaliation. *Id.* Where an employee's performance was "seriously deficient and worthy of disciplinary action," procedural mistakes and abnormalities will not suffice to establish retaliatory motive. *Id.*

In this case, Robert admitted that he got out of his squad car, picked up trash that was in the street and threw it into his neighbor's yard. He further acknowledged that when the SBPD receives a citizen complaint, it is right to investigate it. Finally, he admits that, when he is in a police car, even off duty, the rules of the SBPD manual apply to him. Thus, based on Robert's own acknowledgments, it's clear that, even if the SBPD's investigation contained some mistakes and abnormalities, Robert's own behavior, which prompted his neighbor to complain to the SBPD, was worthy of at least an investigation. These alleged flaws cannot on their own establish a retaliatory motive.

What's more, even if Robert could make out a prima facie case of retaliation, clearing the first hurdle of our burden-shifting framework, the SBPD has offered a legitimate, non-retaliatory reason for conducting the investigations: it received a citizen complaint claiming that Robert had committed vandalism (the reason for Sergeant Wolff's investigation) and a citizen's complaint regarding vandalism by an officer warrants an Internal Affairs investigation (the reason for Captain Schweizer's investigation). Robert has failed to put forth any evidence to show that this reason is pretextual.

That's not to say that Robert has not put forth *any* evidence. To the contrary, he has filed nearly 70 exhibits in opposing summary judgment. Although the defendants have moved to strike most of this evidence as inadmissible [DE 65] — and have detailed in painstaking fashion how each piece of it is inadmissible — I have considered all of it. The evidence, however, contains mostly legal conclusions and irrelevant information. It is enough to say that none of Robert's evidence creates a genuine dispute of material fact that warrants denying summary judgment.

With respect to the Title VII claim, one final issue must be addressed. In his complaint, Robert refers only to the July 2014 investigations into the trash incident as potentially adverse employment actions. But in his briefing in response to this motion, Robert mentions, only in passing, various disciplines he has received over the course of his career at the SBPD, including his referral to the Board of Public Safety for discharge, his being relieved of duty by former Chief of Police Charles Hurley, and his reassignment to desk duty purportedly without any justification. He also briefly mentions his resigning purportedly because of the discrimination he faced. Robert appears to be arguing that he these actions also constitute retaliation.

As an initial matter, when a new argument is made in summary judgment briefing, I must consider whether the new argument changes the factual theory or just the legal theories the plaintiff has pursued so far. *Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 860 (7th Cir. 2017). Where it changes the complaint's factual theory, this could be an attempt by the plaintiff to, in effect, amend his complaint. If that's the case, then I

have discretion to deny the de facto amendment and refuse to consider the new factual claims. *Id.* Here, if Robert is trying to assert that the additional discipline constitutes adverse action, he is clearly attempting to allege a new factual theory that differs significantly from his complaint and would change his claims in an important way. I am well within my discretion to refuse to consider these new factual claims. Indeed, to allow Robert to claim for the first time at the summary judgment stage that several other incidents in his past could also have been retaliation would present the most unfair of surprises to the defendants.

But even if those alleged adverse actions had been properly pled, and to the extent that Robert means to argue they constitute adverse employment action for purposes of retaliation, I disagree. Robert has put forth absolutely no evidence whatsoever showing that any of that discipline was imposed in retaliation for his having engaged in protected activity. He can't even point to any indicia of retaliation, such as suspicious timing, suspicious remarks, or disparate treatment from other officers who did not complain of discrimination. This failure dooms his claim, even if it had been properly pled.

### 2. *First Amendment Retaliation*

Robert's next claim is that the same actions by the SBPD also constitute retaliation in violation of the First Amendment. To prevail on a First Amendment retaliation claim, Robert must first establish a prima facie case. This requires showing that: he engaged in activity protected by the First Amendment; he suffered a deprivation that would likely deter First Amendment activity in the future; and the First Amendment activity was at

12

least a motivating factor in the defendant's decision to take retaliatory action. *McGreal v. Vill. of Orland Park*, 850 F.3d 308, 312 (7th Cir. 2017). If Robert can make out a prima facie case, the burden shifts to the City to show that the same decision would have been made in the absence of protected speech. If the City can make such a showing, the burden shifts back to the plaintiff to demonstrate that the reason is pretextual and the real reason is retaliatory animus. *Id.* at 312-13.

As was the case with his Title VII retaliation claim, Robert cannot establish a prima facie case of retaliation. Because the parties do not dispute that Robert engaged in constitutionally protected speech, Robert need only show that he suffered a deprivation and that his First Amendment activity played a role in that deprivation. The deprivation must be sufficiently adverse to deter the exercise of the individual's right to free speech. *Hutchins v. Clarke*, 661 F.3d 947, 956 (7th Cir. 2011). Robert cites no case law in this Circuit, or in any other, in which a court has found that an investigation prompted by the plaintiff's own misconduct is a deprivation. As a district court in this Circuit recently recognized, the Supreme Court has alluded to the idea that the adverse consequences of a retaliatory investigation might, in theory, justify recognizing it as a deprivation. *Evans v. City of Chi.*, No. 16-cv-7665, 2017 WL 1954544, at *6 (N.D. Ill. May 11, 2017) (citing *Hartman v. Moore*, 547 U.S. 250 (2006)). But like in that case, here, there is no suggestion that the investigation was harassing or jeopardized Robert's employment. It's entirely expected that if an employer receives a complaint about one of its employees, it will investigate that complaint. Being investigated after being the subject of such a complaint is not enough to deter the exercise

of an individual's right to free speech.

Even if there was a deprivation, Robert cannot show that his First Amendment activity was at least a motivating factor in the defendant's decision to investigate him. This element is a causation inquiry, and it requires Robert to show that the protected conduct was a substantial or motivating factor in the City's decision. *Massey v. Johnson*, 457 F.3d 711, 716-17 (7th Cir. 2006). This standard is not the same as the traditional "but for" standard, but the protected speech must nonetheless be a factor that motivated the deprivation. *Id.* at 717.

The City has put forth ample evidence that the reason it investigated Robert for his conduct related to the trash incident was the citizen's complaint and its own procedure that calls for an Internal Affairs investigation whenever there is alleged police misconduct. Despite his lengthy submissions, Robert has not offered any evidence that a retaliatory motive played a role in the investigations. Although Robert is not required to come forward with smoking-gun-type evidence, he still needs to provide some circumstantial proof, such as suspicious timing or disparate treatment — something — that can support his claim. *See id.* He has not done so. As with his Title VII retaliation claim, the only thing that Robert can point to is the City's failure to follow its own internal procedures during the course of the investigations. As I have already explained, this failure alone cannot create a triable issue of fact sufficient to withstand summary judgment.

Because there is insufficient evidence of retaliation in violation of Robert's First Amendment rights or Title VII, his claims against both the City and the individual

defendants fail.

## Conclusion

For the reasons set forth above, the defendants' motion for summary judgment [DE 52] is **GRANTED**. All claims are **DISMISSED WITH PREJUDICE**. The Clerk shall enter judgment in favor of the defendants and against Theodore Robert accordingly.

The defendants' motion to strike [DE 65] is **DENIED AS MOOT**.

**SO ORDERED**.

ENTERED: January 2, 2018.

/s/   Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT